IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LATASHA NICOLE HARRIS, | ) CASE NO. 1:22-CV-01099-CEH |
| Plaintiff, | ) <br> ) MAGISTRATE JUDGE <br> ) CARMEN E. HENDERSON |
| v. | ) <br> ) **MEMORANDUM ORDER & OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) <br> ) |

## I.  Introduction

Plaintiff, Latasha Nicole Harris ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"), Period of Disability ("POD"), and Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

## II.  Procedural History

Claimant filed applications for SSI, POD, and DIB on August 26, 2020, alleging a disability onset date of June 13, 2020. (ECF No. 9, PageID #: 337). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 337). On May 3, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 9, PageID #: 337). The ALJ issued a written decision on May 14, 2021, finding Claimant was not disabled. (ECF No. 9, PageID #: 334). The ALJ's decision became

1

final on April 22, 2022, when the Appeals Council declined further review. (ECF No. 9, PageID #: 38).

Claimant filed a complaint to challenge the Commissioner's final decision in the U.S. District Court for the Northern District of Ohio on June 22, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 12). Claimant asserts the following assignment of error:

> (1) The ALJ's RFC determination is the product of legal error and therefore not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Drs. Nataly V. Torrejon, M.D. and Chen Yan, M.D., treating physicians.

(ECF No. 11, PageID #: 1945).

### III. Background

#### A. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> In terms of the claimant's alleged physical limitations and symptoms including pain, a review of the record shows that on May 18, 2020 the claimant returned to see Kevin Borst, DO. The claimant was pregnant and had been diagnosed with gestational diabetes mellitus. The claimant said she was taking her insulin as prescribed, but admitted that she missed the dinner shot at times leading to some elevated values. On examination, the claimant was alert, cooperative, and in no distress. The examination of her extremities was normal (2F/17-19).
>
> On July 20, 2020, the claimant saw Shelby Northup, BA, at the Cleveland Clinic Section of Hearing, Speech, and Balance Services. The claimant reported that her right hearing aid was sounding too low. Additionally, she asked if they could reprogram her devices. She also reported that she thought her hearing had changed since her pregnancy. An initial listening check revealed that the devices were in poor working condition so the devices were cleaned and checked. A final listening check revealed a significant improvement in sound quality after cleaning. The claimant was given a new pack of wax guards and a routing sheet to schedule an updated hearing test and hearing aid check to make any appropriate programming changes (2F/6).

On August 31, 2020, the claimant saw physician assistant Cassandra Valentino about right wrist pain for the past two months. The claimant had been taking Tylenol with minimal improvement of symptoms. The claimant denied numbness or tingling. She was currently pregnant and on insulin for gestational diabetes. On examination, the claimant was alert and in no acute distress. The examination of the right wrist, hand, and fingers showed mild soft tissue swelling of the wrist; some tenderness to palpation; slightly decreased range of motion of some finger joints; decreased range of motion of the wrist; and normal sensation to light touch. X-rays of the claimant's right wrist showed no acute findings. Ms. Valentino diagnosed De Quervain's tenosynovitis and pain in the right wrist. Ms. Valentino prescribed a thumb spica brace and reviewed range of motion and gentle stretching activities with the claimant. She provided the claimant with dosing recommendations of Tylenol since the claimant was pregnant. Ms. Valentino prescribed occupational therapy to begin at the claimant's earliest convenience. Ms. Valentino also told the claimant to obtain clearance from her OB for a possible local steroid injection into the right wrist (3F/8-16).

On September 11, 2020, the claimant saw clinical audiologist Kathleen Kelly at the Cleveland Clinic for a recheck audiologic evaluation. The claimant also saw Shayna Cole, BS, for a hearing aid check. The claimant complained of reduced hearing in both ears. The claimant had a history of bilateral otosclerosis and was status post left sided stapedectomy in January 2018. She was fit with two Phonak Audeo M70-312 hearing aids on February 11, 2020. She had previously reported a perceived change in hearing since her recent pregnancy (she was currently 33 weeks GA). Currently, she reported a perceived decline in hearing sensitivity, bilaterally. She stated that she struggled to hear normal conversations and believed her right hearing aid might need to be sent out for repair, as it did not seem to be functioning properly. The claimant's devices were cleaned and checked. The initial listening check revealed that the devices were in poor working condition and a visual inspection revealed that the wax guard was not seated properly in the receiver. The final listening check revealed good working function of the devices and the claimant reported satisfaction with the sound quality. The claimant's hearing aids were also connected to the fitting software and reprogrammed based on results of that day's recheck audiologic evaluation. The claimant reported a significant improvement in volume and sound quality and she was pleased with the settings and therefore no further programming changes were made. The claimant was encouraged to contact the hearing aid check department should concerns arise in the future and to return annually, or sooner, for a hearing aid check (3F/5-8).

3

On September 16, 2020, the claimant saw physician assistant Lisa Miller with a chief complaint of right wrist pain despite wearing a thumb spica brace and taking Tylenol. The claimant denied numbness, weakness, and decreased motion. Ms. Miller explained that recent studies found that about 80% of patients with De Quervain's tenosynovitis got better with a corticosteroid injection into the first dorsal compartment. However, if the claimant was unsatisfied with non-operative treatment, she would be offered surgery to release the first dorsal compartment. The claimant wanted to try an injection so Ms. Miller administered an injection and she advised the claimant to continue wearing her thumb spica brace (4F/6-10).

On November 3, 2020, the claimant saw Adrian Zachery, DO, with a chief complaint of low back and leg pain. The claimant reported low back and leg pain since 2018 that was worsening. She said that her leg pain was greater than her back pain and she felt at times she was "paralyzed" and unable to ambulate at times due to pain. The claimant had given birth to her baby about three weeks ago. Although the claimant described her pain as "paralyzing" and "stabbing," and she rated it at 10/10, on examination the claimant was alert and well appearing. Her gait was normal. The strength in her lower extremities was 5/5 (normal). Sensation was within normal limits. Dr. Zachery noted that the claimant was on her cell phone throughout the examination and she exhibited poor effort throughout the entire examination. Dr. Zachery ordered x-rays of the lumbar spine and he prescribed Mobic and physical therapy (5F/11-17).

On November 4, 2020, x-rays of the claimant's lumbar spine showed "possible minimal" disc space narrowing at L5-S1 (5F/18).

On November 3, 2020, the claimant attended a physical therapy evaluation with a chief complaint of bilateral buttock and leg pain. Kristen Lacrosse, PT, recommended one visit per week for eight weeks and she rated the claimant's prognosis as "good" (7F/15-20).

On November 4, 2020, the claimant saw Luzma Cardona, MD, at Headache Medicine. The claimant was 30 minutes late so Dr. Cardona could only offer the claimant a short evaluation. The claimant described a history of headaches for the past ten years. The claimant had seen Dr. Goforth earlier in the year, but she was pregnant so her medical options were limited. Dr. Cardona prescribed Relpax and Periactin and she asked the claimant to follow up in six weeks (5F/6-10).

4

On November 23, 2020, the claimant told her OB/GYN that she stopped her insulin on her own because her glucose levels were often low and she became symptomatic. Dr. Brackney told the claimant that stopping her inulin was reasonable and she referred the claimant to the endocrinology department for diabetes mellitus management per the claimant's request (8F/24).

On December 16, 2020, the claimant saw clinical audiologist Jennifer Halter with a complaint of increased difficulty hearing, right greater than left, after recent childbirth. The claimant had undergone a stapedectomy of the left ear in January 2018 and she was scheduled for a stapedectomy of the right ear in January 2021. The claimant was still wearing her Phonak Audeo M70-312 hearing aids (9F/70-71).

On December 21, 2020, an MRI of the claimant's lumbar spine showed no significant lumbar spondylosis and no high-grade spinal canal or foraminal stenosis at any level (9F/108).

On December 24, 2020, the claimant had a physical examination in advance of her ear surgery in January 2021. The claimant weighed 247 pounds resulting in a Body Mass Index of 37.56. The physical examination was normal—on examination, the claimant was alert, talkative, and in no acute distress. Her gait was normal. Her motor skills were normal. There was no weakness or sensory deficit. Her lungs were clear. For migraine, the claimant was on Periactin and Relpax "as needed" and for asthma, the claimant took Albuterol "as needed" (9F/63-67).

On January 11, 2021, the claimant underwent a stapedectomy of the right ear (9F/38-43).

On January 22, 2021, the claimant returned to see Dr. Zachery about her low back and leg symptoms. Dr. Zachery added Neurontin (9F/35-37). On February 5, 2021, Dr. Zachery prescribed Ultram per the claimant's request (9F/24).

On February 5, 2021, the claimant returned to see Ms. Miller about her right wrist pain. The claimant denied numbness. The claimant explained that the injection in September 2020 had improved her symptoms until about three weeks ago and she wanted another injection, which Ms. Miller administered. On examination of the wrist and fingers, there was some tenderness to palpation, but the claimant was able to flex and extend all fingers, had full range of motion of the wrist/fingers, and full sensation of all digits (9F/21-24).

On February 9, 2021, the claimant had a virtual appointment with

5

neurologist Daniel Feldman, MD, about her headaches. The claimant reported that her headaches worsened after giving birth to her child in October 2020 and became daily. The claimant further reported that her medications did not help and she wanted to try Botox. Dr. Feldman thought the claimant's headaches were most consistent with chronic migraines. However, her treatment to date had been fairly limited—she had tried and failed Periactin and had only taken a few doses of Gabapentin. Dr. Feldman explained to the claimant that she would not qualify for Botox as she had not tried enough formulary alternatives for prophylaxis. He recommended Topamax. He noted that the claimant's primary care physician had just ordered Relpax as a rescue option, which he thought was reasonable. Dr. Feldman asked the claimant to follow up in three months (9F/17-21).

As of February 9, 2021, the claimant's right ear was fully healed and she was told to resume wearing her hearing aid (9F/16-17).

On February 15, 2021, the claimant attended a functional capacity evaluation conducted by Brett Balis, PT, at Lutheran Hospital. The evaluation lasted 150 minutes. Mr. Balis determined that the claimant demonstrated the ability to perform within the sedentary physical demand category as outlined in the Dictionary of Occupational Titles. However, he added that the claimant was unable to work full time because she could only work for up to 6 hours and 42 minutes per day while taking into account her need to alternate sitting and standing (9F/14-15).

Although Mr. Balis is not an acceptable "medical source" under the current SSA rules, the undersigned considered his input. In doing so, Mr. Balis's input is not persuasive because it is not supported by the normal or generally unremarkable physical examinations of the claimant outlined above. In addition, Mr. Balis noted that the claimant showed "sub-maximal effort." Although he described her sub-maximal effort as "mild," the undersigned notes that in 2020 Dr. Zachery indicated the claimant exhibited "poor effort" (see above).

On March 3, 2021, Dr. Zachery sent an email to the claimant. He noted that the claimant's recent pelvic MRI imaging mentioned sacroiliitis in the bilateral sacroiliac joints. Dr. Zachery said they could consider scheduling the claimant for bilateral sacroiliac joint injections to see if this offered any relief of her pain complaints (12F/2; and see 9F/91-93 for the MRI results).

On March 4, 2021, the claimant consulted with Chen Yan, MD, at the Mellen Center for Multiple Sclerosis. The claimant was worried because her sister had multiple sclerosis. The claimant

> reported tingling and numbness of the hands and subjective decreased hand strength. She reported constant leg pain described as "achiness, knife-like." The claimant weighed 260 pounds resulting in a Body Mass Index of 39.53. On examination, the claimant was alert and her attention/concentration, memory, praxis, intellectual function, and affect were normal. Her hearing was intact. Her gait was normal and there was "mild" unsteadiness with tandem gait. She had 5/5 (normal) strength in the upper extremities and 5/5 strength in the lower extremities except for the hip flexors that were 4/5 (not normal, but good). The sensory examination was normal to light touch in all extremities, normal to vibration in the lower extremities, decreased to cold temperature in all extremities, and pinprick was decreased in all extremities, up to about mid-shin in the lower extremities and mostly limited to the hands in the upper extremities. Dr. Yan thought the examination findings of decreased pinprick and temperature sense was suggestive of small fiber neuropathy (12F/3-10).
>
> On March 9, 2021, the claimant told Dr. Zachery that she had run out of Tramadol (Ultram) and Gabapentin. She asked him for a higher dose of Tramadol (Ultram) explaining that she had been prescribed 50 mg every six hours, but she had to take two 50 mg every six hours to get pain relief. She also noted that she was prescribed Gabapentin 300 mg TID (12F/28). Later that day, Dr. Zachery approved Tramadol 50 mg every six hours "as needed" for up to 7 days and Gabapentin 300 mg TID (12F/30-32).

(ECF No. 9, PageID #: 343–46)

### B. Opinion Evidence at Issue

The ALJ's review of the opinions of Dr. Chen Yan, M.D., and Dr. Nataly Torrejon, M.D., are at issue on appeal. The ALJ first summarized Dr. Yan's opinion from April 23, 2021:

:

> On April 23, 2021, Dr. Yan completed a form about the claimant's physical capabilities. Dr. Yan expressed the following medical opinion: the claimant can sit for less than 2 hours of an 8- hour workday, and only for 10 minutes at a time before needing to get up; stand/walk for less than 2 hours of an 8-hour workday, and she can only stand for 10 minutes at a time before needing to sit down or walk around; she will need 1-2 unscheduled breaks in a workday, lasting 5 to 10 minutes each; she needs to elevate her legs above her heart 10% of a workday; she can occasionally lift/carry less than 10 pounds; she can use her hands, fingers, and arms only 10% of a workday; she will be off-task 25% or more of

7

> a workday due to symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and she will be absent from work more than 4 days per month due to impairments or treatment (13F).

(ECF No. 9, PageID #: 346–47). The ALJ next summarized Dr. Torrejon's opinion from April 28, 2021:

> On April 28, 2021, Nataly Torrejon, MD, the claimant's primary care physician, completed a form about the claimant's physical capabilities. Dr. Torrejon expressed the following medical opinion: the claimant can sit for less than 2 hours of an 8-hour workday, and only for 5-10 minutes at a time before needing to get up; stand/walk for less than 2 hours of an 8-hour workday, and she can only stand for 10 minutes at a time before needing to sit down or walk around; she will need 2 unscheduled breaks in a workday, lasting 30 minutes each; she can occasionally lift/carry less than 10 pounds and rarely lift/carry 10 pound; she can use her hands 20% of the time, fingers 25% of the time, and arms 20% of the time; she will be off-task 25% or more of a workday due to symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and she will be absent from work more than 4 days per month due to impairments or treatment (14F/1-7).

(ECF No. 9, PageID #: 347).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since June 13, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: hearing loss, status post stapedectomy, with bilateral amplification; gestational diabetes; obesity; sacroiliitis; de Quervain's tenosynovitis; migraine; and asthma (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

8

(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for no climbing of ladders, ropes or scaffolds, or crawling; frequent balancing, handling and fingering; occasional climbing of ramps and stairs, stooping, kneeling and crouching; no concentrated exposure to temperature extremes, humidity, environmental pollutants, high background noise or vibration; no exposure to hazards (heights, machinery, commercial driving); and no public contact as a job requirement (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 13, 1985 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 9, PageID #: 340, 341, 349, 350)

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–

43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises one issue on appeal. She argues the ALJ erred in providing a "cursory" review of Drs. Yan and Torrejon's opinions that did not include "a legally sufficient analysis of consistency pursuant to the regulations." (ECF No. 11, PageID #: 1957, 1959). After listing a number of medical records, Claimant contends that the opinions *are* consistent with the record and that the ALJ failed to consider these documents in discounting the opinions. (ECF No. 11, PageID #: 1960). Finally, Claimant argues there is not enough evidence to craft an RFC because the ALJ rejected all the expert opinions in the record and should have instead ordered a consultative examination. (ECF No. 11, PageID #: 1961).

The Commissioner rejects Claimant's arguments, arguing that the ALJ's review complied with Social Security regulations. (ECF No. 12, PageID #: 1964–65). As the experts' records do not support their recommended limitations, the Commissioner argues that substantial evidence supports the ALJ's rejection of their opinions. (ECF No. 12, PageID #: 1964).

### a. Expert Opinion Arguments

An ALJ determines a claimant's RFC by considering all relevant medical and other evidence. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the

11

rules for evaluating medical opinions for claims filed after March 27, 2017.[1] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a).

Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

### i. Dr. Yan

The ALJ first summarized Dr. Yan's opinion in their decision:

> On April 23, 2021, Dr. Yan completed a form about the claimant's physical capabilities. Dr. Yan expressed the following medical opinion: the claimant can sit for less than 2 hours of an 8- hour workday, and only for 10 minutes at a time before needing to get up; stand/walk for less than 2 hours of an 8-hour workday, and she can only stand for 10 minutes at a time before needing to sit down or walk around; she will need 1-2 unscheduled breaks in a workday, lasting 5 to 10 minutes each; she needs to elevate her legs above her heart 10% of a workday; she can occasionally

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by § 404.1520c for claims filed on or after March 27, 2017, such as here.

> lift/carry less than 10 pounds; she can use her hands, fingers, and arms only 10% of a workday; she will be off-task 25% or more of a workday due to symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and she will be absent from work more than 4 days per month due to impairments or treatment (13F).

(ECF No. 9, PageID #: 346–47).

The Court notes that while Claimant assumes the ALJ offered only one explanation for rejecting the opinions of Dr. Yan *and* Dr. Torrejon, this is incorrect. (*See* ECF No. 11, 1957, 1959). The ALJ provided two separate and distinct rationales for rejecting each opinion. (*See* ECF No. 9, PageID #: 347). They rejected Dr. Yan's opinion for the following reasons:

> Dr. Yan's medical opinion is not persuasive because such severe and extreme limitations are not supported by the physical examination findings on March 4, 2021. As outlined above, Dr. Yan noted the claimant had "subjective" decreased hand strength. On examination, her gait was normal and she had 5/5 (normal) strength in the upper extremities and 5/5 strength in the lower extremities except for the hip flexors that were 4/5 (not normal, but good). Although the sensory examination showed decreased sensation to cold temperature and pinprick in all extremities, there was normal sensation to light touch in all extremities and normal sensation to vibration in the lower extremities. In addition, the claimant was alert and her attention/concentration were normal. Dr. Yan's medical opinion is not persuasive because such severe and extreme limitations are not consistent with the limited course of treatment consisting of medications, two corticosteroid injections, and a short course of physical therapy.

(ECF No. 9, PageID #: 347).

In rejecting the opinion, the ALJ first discussed its lack of supportability. They noted the opinion was not supported by Dr. Yan's physical examination findings on March 4, 2021, which recorded normal gait, extremity strength, sensation to light touch, and sensation to vibration. (ECF No. 9, PageID #: 347). The ALJ also noted that Dr. Yan's record demonstrated other "normal" findings that did not support the "severe and extreme" restrictions, including good hip

13

flexor strength and generally normal mental health findings. (ECF No. 9, PageID #: 347). Upon review of the record, this is a reasonable interpretation of Dr. Yan's report.

The ALJ next noted that Claimant's conservative treatment was inconsistent with the extreme restrictions Dr. Yan recommended—which would allow Claimant to sit, stand, and walk for less than four hours a day. (ECF No. 9, PageID #: 346–47). They observed that these restrictions were inconsistent with Claimant's "limited course of treatment consisting of medications, two corticosteroid injections, and a short course of physical therapy," which the Court notes had a "good" prognosis. (ECF No. 9, PageID #: 347 (ALJ's review), 1509 (physical therapist reporting a "good" prognosis)). As Dr. Yan's recommended limitations were highly restrictive, Claimant's limited treatment and promising physical therapy prognosis were not consistent with the opinion. Thus, substantial evidence supports the ALJ's review of the opinion's consistency.

Claimant makes much of the case *Hardy v. Commissioner of Social Security*, where a Michigan court remanded the ALJ's decision since their rejection of two opinions was "brief and limited." (ECF No. 11, PageID #: 1958 (citing 554 F. Supp. 3d 900 (E.D. Mich. 2021)). But *Hardy* differs from this case. There, the ALJ failed to reference the supportability and consistency factors for each opinion and rejected both with three total sentences.[2] *See id.* at 906–07. The ALJ here, however, provided longer explanations for their decision to discount the opinions and explicitly addressed the supportability and consistency factors in their rationale.

---

[2] They rejected the first opinion with the following sentence: "Dr. Carey's form statement was unpersuasive; it lacked support in Dr. Carey's own contemporaneous treatment documentation or elsewhere in the extensive record." *Id.* at 906. The ALJ's rejection of the second opinion was equally brief: "Dr. Trostinkaia's form statement was overly sympathetic to claimant and otherwise unpersuasive. As detailed above, Dr. Trostinkaia's clinical examination reports include few musculoskeletal findings, and none supporting effectively requiring claimant to lie down for a significant portion of the work day." *Id.* at 907.

Thus, Hardy's facts are inapplicable to this case and fail to demonstrate how substantial evidence does not support this ALJ's finding.

The ALJ's review of Dr. Yan's opinion complied with Social Security regulations, and substantial evidence supports their finding. Accordingly, the Court sees no reason to disturb the decision.

### ii. Dr. Torrejon

The ALJ next reviewed and summarized Dr. Torrejon's opinion:

> On April 28, 2021, Nataly Torrejon, MD, the claimant's primary care physician, completed a form about the claimant's physical capabilities. Dr. Torrejon expressed the following medical opinion: the claimant can sit for less than 2 hours of an 8-hour workday, and only for 5-10 minutes at a time before needing to get up; stand/walk for less than 2 hours of an 8-hour workday, and she can only stand for 10 minutes at a time before needing to sit down or walk around; she will need 2 unscheduled breaks in a workday, lasting 30 minutes each; she can occasionally lift/carry less than 10 pounds and rarely lift/carry 10 pound; she can use her hands 20% of the time, fingers 25% of the time, and arms 20% of the time; she will be off-task 25% or more of a workday due to symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and she will be absent from work more than 4 days per month due to impairments or treatment (14F/1-7).

(ECF No. 9, PageID #: 347). However, they discounted the opinion:

> Dr. Torrejon's medical opinion is not persuasive because such severe and extreme limitations are not supported by clinical finding and objective signs of tenderness to palpation of the bilateral paraspinal muscles that she cited to (14F/1). Dr. Torrejon's medical opinion is not persuasive because such severe and extreme limitations are not consistent with the limited course of treatment consisting of medications, two corticosteroid injections, and a short course of physical therapy.

(ECF No. 9, PageID #: 347).

Here, the ALJ again discussed the supportability and consistency of the opinion. They noted that Dr. Torrejon's restrictions were unsupported by "clinical finding[s] and objective

15

signs of tenderness to palpation of the bilateral paraspinal muscles that she cited to." (ECF No. 9, PageID #: 347). Indeed, while the record demonstrates Claimant's lower back pain—and the ALJ acknowledged these records—it fails to demonstrate severity that would warrant Dr. Torrejon's restrictive, if not disabling, limitations. (ECF No. 9, PageID #: 344 (citing Exs. 5F, 7F), 345 (Ex. 9F), 346 (Ex. 12F)). The ALJ then turned to Claimant's "limited" treatment: medication, two corticosteroid injections, and a "short" course of physical therapy. (ECF No. 9, PageID #: 347). As discussed above, Claimant's ability to complete physical therapy, and limited use of treatment in general are inconsistent with Dr. Torrejon's opinion. Thus, the ALJ complied with § 404.1520c factors, and substantial evidence supports their rationale.

The Court notes that Claimant cites a number of records in support of both experts' opinions. (*See* ECF No. 11, PageID #: 1959–60). However, this argument merely highlights that there may be substantial evidence to support an alternative conclusion. This is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Finally, to the extent Claimant faults the ALJ for not reconciling these records with their opinion findings, this argument fails. The ALJ is not required to discuss every record in their opinion, and § 404.1520c does not require an ALJ to discuss every reason they discounted an opinion. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No.

16

5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record, [s]he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Instead, § 404.1520c requires ALJs to provide a meaningful explanation of their rationale in rejecting or accepting an opinion, which the ALJ here did.

Substantial evidence supports the ALJ's findings and rationale for rejecting both opinions. Thus, the Court will not disturb the decision.

### b. Evidence Sufficiency Argument

Finally, the Court rejects Claimant's argument that there is not enough evidence to craft an RFC because the ALJ rejected all opinion evidence and should have instead ordered a consultative examination. (ECF No. 11, PageID #: 1961). This argument mischaracterizes the ALJ's decision. In fact, the ALJ found the state agency consultants' opinions persuasive, despite Claimant's arguments to the contrary. (*See* ECF No. 9, PageID #: 348). While the ALJ ultimately decided to adopt further limitations, they were not required to accept the opinions' recommendations verbatim and did not err in this decision. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (noting that an ALJ is not required to adopt each restriction of an expert to which it gave great weight). Thus, Claimant's argument fails.

## VI. Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

**IT IS SO ORDERED.**

Dated: July 21, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

17